FILED
July 02, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____NM_____
           DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **HAYAM EL GAMAL**, *et al.*, | § | |
| | § | |
| Petitioners, | § | |
| | § | |
| v. | § | |
| | § | |
| **KRISTI NOEM**, Secretary of U.S. Department of Homeland Security; **TODD LYONS**, Acting Director of Immigration and Customs Enforcement; **SYLVESTER ORTEGA**, ICE San Antonio Field Office Director; and **JOSE RODRIGUEZ, JR.**, Administrator of Dilley Immigration Processing Center, | § § § § § § § § § | NO. SA-25-CV-00664-OLG |
| Respondents. | § | |

# ORDER

Before the Court is Petitioners' First Amended Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (*see* Dkt. No. 26) and the status of the TRO currently in place (*see* Dkt. No. 24).

This case began in the District of Colorado on June 4, 2025. (*See* Dkt. No. 1.) On that day, the Colorado district court issued a TRO preventing Respondents from removing Petitioners from the United States. (Dkt. No. 5.) On June 18, following transfer to the Western District of Texas, the Court extended the TRO for an additional 14 days. (*See* Dkt. No. 24.) On June 23, after further review of the record, the Court ordered the parties to advise whether Petitioners are, in fact, being subjected to expedited removal proceedings as represented by the White House and, if not, whether

there is any basis in law for the TRO to remain in effect or if it should be immediately dissolved.[1] (*See* Dkt. No. 25.) Upon review of the parties' advisories, the record, and the applicable law, the Court finds that it lacks jurisdiction to grant Petitioners the relief they seek and must dismiss this case without prejudice.

In their amended pleading, filed June 25, Petitioners assert four causes of action. Counts I and II assert that their detention violates their Fifth Amendment rights to substantive due process and equal protection; Counts III and IV assert that expedited removal proceedings violate their rights to procedural due process and the Administrative Procedure Act. (*See* Dkt. No. 26 at ¶ 19–31.) They seek the following forms of relief: (1) an injunction preventing Respondents from deporting Petitioners or transferring them outside of the Western District of Texas; (2) a writ of habeas corpus requiring Petitioners' immediate release; and (3) a judgment declaring that Petitioners' detention is unauthorized and unlawful. (*Id.* at 8.)

As set forth below, this case must be dismissed for two main reasons: (I) because Petitioners are receiving the correct (and full) process due under the Immigration and Nationality Act (INA), all claims predicated on the Government's subjecting them to expedited removal proceedings are moot; and (II) because the INA bars review of discretionary detention decisions, the Court is precluded from adjudicating Petitioners' remaining claims at this point in the administrative process.

---

[1] The Court additionally instructed the parties to advise whether the Court had jurisdiction to issue a show cause order or enter any further relief based on the original verified petition for writ of habeas corpus and complaint for declaratory and injunctive relief filed in the District of Colorado (*see* Dkt. No. 1). (Dkt. No. 25.) *See* 28 U.S.C. § 2243 ("The writ, or order to show cause, shall be directed to the person having custody of the person detained."). The amended petition and complaint, filed June 25 (*see* Dkt. No. 26), now includes the proper respondent.

**I**

Following Petitioners' initial arrest in Colorado, this litigation began in an emergency posture because of confusion over the type of removal proceedings to which Petitioners were being subjected: ordinary or expedited. In agreement with the Colorado district court that expedited removal proceedings in Petitioners' case were unavailable and therefore would be unlawful, and because the TRO was set to expire in a matter of hours, the Court granted Petitioners' request to extend injunctive relief for an additional 14 days.

As Respondents have admitted in their briefing, the INA does not permit the use of expedited removal proceedings in Petitioners' case. "[A]n alien present in the United States who has not been admitted . . . is deemed an applicant for admission." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020) (quoting 8 U.S.C. § 1225(a)(1)) (internal marks omitted). "An applicant is subject to expedited removal if, as relevant here, the applicant (1) is inadmissible because he or she lacks a valid entry document; (2) has not been physically present in the United States continuously for the [two]-year period immediately prior to the date of the determination of inadmissibility; and (3) is among those whom the Secretary of Homeland Security has designated for expedited removal." *Thuraissigiam*, 591 U.S. at 109 (citing 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)—(II)) (internal marks omitted). In this case, the second necessary element for expedited removal cannot be satisfied, as Petitioners have been physically present in the United States continuously since August 27, 2022. (*See, e.g.*, Dkt. No. 15-1, at 9, 15, 21, 27, 33, 39.)

The confusion over whether Petitioners were being subjected to expedited removal was incited by social media posts issued by the White House on June 3, 2025—the day Petitioners were taken into custody by Immigrations and Customs Enforcement (ICE) officers. The first proclaimed that Petitioners were "now in ICE custody for expedited removal" and "COULD BE DEPORTED

3

AS EARLY AS TONIGHT." (Dkt. No. 28 at 2–3.) The second, published ten minutes later, announced "Six One-Way Tickets for Mohamed's Wife and Five Kids. Final Boarding Call Coming Soon. ✈."[2] (*Id.*) Based on the record, however, this was not the case.

In the initial briefing on this issue prior to the transfer, Respondents clarified that "[Petitioners] were being placed into ordinary removal proceedings and would appear before an immigration judge where they would be permitted to seek relief or protection from removal." (Dkt. No. 15 at 4; *see also* Dkt. No. 16 at 7 n.7.) The Government further conceded that Petitioners "are not eligible for 'expedited' removal proceedings." (Dkt. No. 15-1 at ¶ 18.) Noting the White House's posts, the Colorado district court found that confusion warranted maintaining the TRO.[3]

Respondents have since expressly advised the Court as follows:

> Regardless of any confusion that may have existed at the outset of this litigation, there is no dispute currently that Ms. El Gamal and her children are in "full" removal proceedings in immigration court and are not subject to expedited removal proceedings under 8 U.S.C. § 1225(b).

(Dkt. No. 27 at 1.) They further expressly represent that Petitioners' removal proceedings are progressing in accordance with 8 U.S.C. § 1229a (*see id.* at 2; Dkt. No. 15-1 at ¶ 16), which is the very process Petitioners have pleaded they are due (*see* Dkt. No. 26 at ¶ 29). They further point

---

[2] It was on this basis that the Colorado district court granted the TRO. (Dkt. No. 16 at 7 n.7.)

[3] With respect to the statements issued by the White House, the Colorado district court included the following explanatory footnote in its transfer order:

> The Government . . . states that [Petitioners] have been placed in conventional . . . removal proceedings and suggests that this was the plan all along. But the Government's brief entirely ignores the White House's pronouncements to the contrary . . . that justified issuing the TRO in the first instance. [Its] brief does not disavow the White House's earlier pronouncements that it intends to attempt expedited removal or remove [Petitioners] immediately despite apparently recognizing that such processes would not comport with due process. While . . . the propriety of continued injunctive relief is ultimately an issue for another court, the lack of clarity (and seeming conflict in position among Government actors as to the plan for removing [Petitioners]) militates in favor of keeping the existing TRO in place for now.

(Dkt. No. 16 at 7 n.7.)

4

out that Petitioners have administrative procedures available for securing their release during the pendency of removal proceedings. (*See* Dkt. No. 27 at 4.)

Accordingly, to the extent that Petitioners seek to enjoin their removal on an *expedited* basis, this request is moot. And to the extent that Petitioners seek to enjoin their being subjected to *ordinary*, or "full," removal proceedings, such relief is not available to them. Removal pursuant to such non-expedited proceedings is not only insufficiently imminent to warrant the extraordinary remedy of a TRO, but it is also expressly authorized by the INA. (*See* Dkt. No. 27 at 2 ("[Petitioners] are scheduled for a second (continued removal hearing on July 11, 2025.").)

Petitioners' request for injunctive relief preventing their immediate removal or the application of expedited removal is therefore **DISMISSED AS MOOT**.

Further, because Counts III and IV are predicated on a finding that the Government is impermissibly subjecting Petitioners to expedited removal proceedings, those claims are also **DISMISSED AS MOOT**.

## II

Petitioners seek a writ of habeas corpus requiring their immediate release from DHS custody, contending that their detention violates the due process and equal protection clauses of the Fifth Amendment because it was intended to punish them for the actions of their family member, Mohamed Soliman. (*See* Dkt. No. 26 at 8; Dkt. No. 28 at 15.) As such, Petitioners claim that their detention is unrelated to a legitimate government purpose. Even if the record supported these assertions, their detention is neither unlawful nor judicially reviewable for the reasons stated below.

"In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521

(2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79–80 (1976)); *see also Bacilio-Sabastian v. Barr*, 980 F.3d 480, 483 (5th Cir. 2020) (recognizing that courts must "take[] a narrow view of habeas relief in the immigration context"). The INA provides that "aliens present in this country may be removed if they fall 'within one or more classes of deportable aliens.'" *Nielsen v. Preap*, 586 U.S. 392, 396 (2019) (quoting 8 U.S.C. § 1227(a) (alterations omitted)). Under the INA, "[a]ny alien who is present in the United States in violation of this chapter or any other law of the United States . . . is deportable." 8 U.S.C. § 1227(a)(1)(b).

In this case, the notices to appear (NTAs) issued by DHS provide that Petitioners were admitted as nonimmigrants and authorized to remain in the United States until February 26, 2023. (Dkt. No. 15 at 9, 15, 21, 27, 33, 39.) As such, the NTAs "charge[] deportability pursuant to 8 U.S.C. § 1227(a)(1)(b) (an alien who, after admission as a nonimmigrant, has remained in the United States for a time longer than permitted)." (Dkt. No. 15-1 at 5 ¶ 16; (*see id.* at 9, 15, 21, 27, 33, 39 ("[Y]ou have remained in the United States for a time longer than permitted, in violation of [the INA] or any other law of the United States.")); *see also* 8 U.S.C. § 1227(a)(1)(b).

The Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. Two provisions govern "the arrest, detention, and release of aliens" believed to be deportable—§ 1226(a), which "applies to most such aliens" provides for discretionary detention, and § 1226(c), which makes detention mandatory for certain aliens. *Nielsen*, 586 U.S. at 396–97; *see* 8 U.S.C. § 1226(a), (c). The former is applicable here and consists of "two sentences, one dealing with taking an alien into custody and one dealing with detention." *Nielsen*, 586 U.S. at 397; *see* 8 U.S.C. § 1226(a). The first sentence provides, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States,"

6

8 U.S.C. § 1226(a), and the second "gives the [Attorney General] the discretion either to detain the alien or to release him on bond or parole" during the pendency of removal proceedings, *Nielsen*, 586 U.S. at 397; *see* 8 U.S.C. § 1226(a)(1)–(2).

The record contains Petitioners' arrest warrants and notices of custody determinations. The arrest warrants provide that the probable cause determination as to Petitioners' removability from the United States was based on the NTAs and "biometric confirmation of [their] identit[ies] and a records check of federal databases that affirmatively indicate . . . that the subject either lacks immigration status or . . . is removable under U.S. immigration law." (Dkt. No. 15-1 at 12, 18, 24, 30, 36, 42.) The notices of custody determination indicate that Petitioners will be detained by DHS "pending a final administrative determination" on removal. (*Id.* at 13, 19, 25, 31, 37, 43.)

As the Court previously suggested in its June 23, 2025, order for advisories, it lacks authority to review an exercise of the Attorney General's discretion under § 1226(a) to detain pending a decision on whether an alien is to be removed from the United States. (*See* Dkt. No. 15 at 4, 6.) Specifically,

> [t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review[,] [and n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e); *see Nielsen*, 586 U.S. at 401; *Kasangaki v. Barr*, No. SA-19-CV-465-FB, 2019 WL 13221026, at *2 (W.D. Tex. July 31, 2019) ("[T]o the extent petitioner challenges . . . the Attorney General's discretionary decision to detain him without bond pending his removal, this Court lacks jurisdiction to consider his claims."); *Kambo v. Poppell*, No. SA-07-CV-800-XR, 2007 WL 3051601, at *10 (W.D. Tex. Oct. 18, 2007) ("[T]he Court finds that it does not have jurisdiction to review the decision to deny release on bond itself or the Attorney General's discretionary judgment regarding the application of 1226(a), 'including the manner in which that discretionary

7

judgment is exercised, and whether the procedural apparatus supplied satisfied regulatory, statutory, and constitutional constrains.'") (quoting *Loa-Herrera v. Trominski*, 231 F.3d 984, 991 (5th Cir. 2000)); *cf. Demore*, 538 U.S. at 516–17 (finding that jurisdiction was proper because the alien did "not challenge a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General . . . made regarding his detention or release, . . . [but] [r]ather, . . . the statutory framework that permit[ted] his detention without bail"); *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001) (distinguishing a challenge to the constitutionality of prolonged, continued detention without a bond hearing *after* entry of a final order of removal from "detention pending a determination of removability").

Although Petitioners correctly assert that § 1226(e) does not preclude an alien from challenging the extent of the Government's detention authority under the statutory framework permitting the alien's detention as a whole, *see Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018); *Demore*, 538 U.S. at 516, that is not the type of challenge advanced here. Petitioners do not assert that § 1226(a) unconstitutionally vests the Attorney General with discretion to detain an alien during the pendency of removal proceedings—i.e., "the extent of the statutory authority that the Government claims." *Nielsen*, 586 U.S. at 401. In essence, rather, Petitioners' challenge is to the fact of their detention—i.e., "that the Government exercised its statutory authority in an unreasonable fashion," *id.*—which was the result of a discretionary decision expressly authorized by § 1226(a) and expressly made unreviewable by this Court under § 1226(e).[4] *See* 8 U.S.C. § 1226(e); *Jennings*, 583 U.S. at 295–96; *cf. Kambo*, 2007 WL 3051601, at *13 (finding that jurisdiction existed only over petitioner's claims that his detention was "without authority and

---

[4]The Court notes that, unlike § 1226(c), which aliens have been permitted to challenge in habeas petitions on the grounds that the statute itself violates due process by mandating detention without a bond hearing, detention under § 1226(a) is always necessarily founded upon a discretionary decision by the Attorney General.

excessively lengthy" and unconstitutional as applied to him where petitioner had been detained under § 1226(a) for almost one year); *cf. Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 488 (1999) ("As a general matter . . . an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation.").

Moreover, Respondents contend that Petitioners' constitutional challenges are also barred by § 1252(b)(9), which provides that

> questions of law and fact, including interpretation and application of constitutional and statutory provisions arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9); (*see* Dkt. No. 15 at 23; Dkt. No. 27 at 4.) Because Petitioners are "challenging the decision to detain them in the first place or to seek removal," § 1252(b)(9) functions as a jurisdictional bar to judicial review. *Nielsen*, 586 U.S. at 402 (quoting *Jennings*, 583 U.S at 294–95); *see also Thuraissigiam*, 591 U.S. at 108 ("If . . . the alien is ordered removed, the alien can appeal the removal order to [BIA] and, if that appeal is unsuccessful, the alien is generally entitled to review in a federal court of appeals.") (citing 8 U.S.C. §§ 1229a(c)(5) and 1252(a)).

The Court hastens to remind Petitioners that they still have an avenue for seeking their release from detention while their removal proceedings continue. As alluded to above, the regulations promulgated pursuant to the INA prescribe administrative procedures for obtaining relief from discretionary detention under § 1226(a). *See* 8 C.F.R. §§ 236.1, 1003.19, & 1236.1. When an alien is detained pending a determination on removal, she "may seek review of [her] detention by an officer at [DHS] and then by an immigration judge . . . and the alien may secure [her] release if [she] can convince the officer or immigration judge that [she] poses no flight risk and no danger to the community." *Nielsen*, 586 U.S. at 397 (citing 8 C.F.R. §§ 236.1(c)(8), (d)(1), 1003.19, & 1236.1(d)(1)). Indeed, the notices of custody determinations specifically informed

Petitioners of their ability to seek "review of th[eir] custody determination by an immigration judge." (Dkt. No. 15-1 at 13, 19, 25, 31, 37, 43.) And should Petitioners receive an adverse ruling, they "may appeal the immigration judge's decision to the Board of Immigration Appeals (BIA)." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527–28 (2021).

Because the INA precludes judicial review of Petitioners' claims under the present circumstances related to their pre-removal discretionary detention, the Court finds that Petitioners' habeas proceeding and their claims in this case must be and hereby are **DISMISSED WITHOUT PREJDUICE**.

This case is **CLOSED**.

It is so **ORDERED**.

**SIGNED** this ___2nd___ day of July 2025.

_____
ORLANDO L. GARCIA
United States District Judge